# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
Filed:  January 16, 2020

```
*  *  *  *  *  *  *  *  *  *  *  *  *   *   *
JUANA OLGA DURAND as personal          *
representative of the estate of Jorge  *
Antonio Durand,                        *              UNPUBLISHED
                                       *
              Petitioner,              *              No. 15-1153V
                                       *
v.                                     *              Special Master Gowen
                                       *
SECRETARY OF HEALTH                    *              Attorneys' Fees and Costs;
AND HUMAN SERVICES,                    *              Excessive Billing; Block Billing;
                                       *              Vague Billing; Undocumented
              Respondent.              *              Expenses.
*  *  *  *  *  *  *  *  *  *  *  *  *   *   *
```

*Leah V. Durant*, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.
*Claudia B. Gangi*, United States Department of Justice, Washington, DC, for respondent.

## DECISION ON ATTORNEYS' FEES AND COSTS[1]

On June 10, 2019, Juana Olga Durand ("petitioner") filed a motion for attorneys' fees and costs. Petitioner's Motion for Attorney Fees ("Fees App.") (ECF No. 82). For the reasons discussed below, petitioner's motion for attorneys' fees and costs is **GRANTED.** Petitioner is hereby awarded **$154,797.51** in attorneys' fees, **$13,282.14** in attorneys' costs, and **$4,507.40** in reimbursement for out-of-pocket costs.

## I.      Procedural History

On October 8, 2015, petitioner filed a petition in the National Vaccine Injury Compensation Program as the personal representative of the Estate of Jorge Antonio Durand.[2]  Petitioner alleged

---

[1] The undersigned intends to post this Ruling on the United States Court of Federal Claims' website. **This means the ruling will be available to anyone with access to the Internet.**  In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy.  If, upon review, the undersigned agrees that the identified material fits within this definition, the undersigned will redact such material from public access. Because this unpublished ruling contains a reasoned explanation for the action in this case, the undersigned is required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services).

[2] The National Vaccine Injury Compensation Program is set forth in Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub L. No. 99-660, 100 Stat. 3755, codified as amended, 42 U.S.C. §§ 300aa-1 to -34 (2012) ("Vaccine Act" or "the Act"). All citations in this decision to individual sections of the Vaccine Act are to 42 U.S.C.A. § 300aa.

that Mr. Durand suffered from Guillain-Barré syndrome ("GBS") as a result of an influenza vaccine he received on September 10, 2013. Pet. at Preamble (ECF No. 1). Petitioner further alleged that Mr. Durand's death was the sequela of his alleged vaccine-related injury.

The petition was filed *pro se*. On December 15, 2015, I held an initial status conference at which petitioner appeared *pro se* accompanied by her probate attorney, Ms. Dana Santino. Initial Order (ECF No. 12) at 1. I ordered petitioner to file all outstanding medical and other records relevant to her claim. *Id.* Additionally, I encouraged petitioner to have an attorney formally represent her in this matter. *Id.* She was sent a list of attorneys already participating in the Vaccine Program. *Id.*

On January 6, 2016, petitioner contacted attorney Leah V. Durant, who has considerable experience in the Vaccine Program. Petitioner's Application for Attorneys' Fees and Costs ("Fees App.") (ECF No. 82), Attachment 1 at 1. Ms. Durant communicated numerous times with petitioner and with the probate attorney Ms. Santino. *Id.* at 1-2

Petitioner formally retained Ms. Durant, who entered her formal appearance in the case on February 26, 2016. Consented Motion to Substitute Attorney (ECF No. 16). Petitioner filed outstanding medical records and a statement of completion on April 6, 2016. ECF Nos. 17-18. During a status conference on May 12, 2016, respondent requested and was granted additional time to determine whether the medical records were complete and whether respondent wished to pursue informal resolution or the litigation track. Order (ECF No. 19). On May 13, 2016, respondent provided petitioner a list of additional medical records which appeared to be outstanding. Status Report (ECF No. 21). Petitioner filed additional records and a supplemental statement of completion on September 12, 2016. ECF Nos. 26-27.

Also in May 2016, Ms. Durant retained Catherine Shaer, M.D., who had previously reviewed vaccine injury claims on behalf of the respondent for ten years, to review the medical records in this case. Fees App. Attachment 1 at 5-7; Attachment 2 at 7-9; Attachment 3 at 1-2.

Following petitioner's filing of additional records and a supplemental statement of completion, on October 28, 2016, respondent communicated an opposition to informal resolution at that time. Status Report (ECF No. 30). I directed petitioner to file an expert report. Scheduling Order filed on October 28, 2016 (Non-PDF). On December 28, 2016, petitioner filed Dr. Lawrence Steinman's one-page preliminary report. Petitioner's Exhibit ("Pet. Ex.") 11 (ECF No. 33). Dr. Steinman opined that there was no question that Mr. Durand developed GBS prompting his presentation for emergency medical treatment on January 5, 2014. *Id.* Dr. Steinman opined that Mr. Durand's presenting symptoms were consistent with GBS but the onset of those symptoms was unclear. *Id.* (citing Ex. 7 at 171, 185; Ex. 8 at 25). Dr. Steinman opined: "No expert will be able to opine in this case until the special master determines the onset of Mr. Durand's GBS." *Id.* Upon review of Dr. Steinman's preliminary report, respondent filed a motion requesting a fact hearing and a factual determination regarding the onset of Mr. Durand's GBS. Respondent's Motion (ECF No. 34).

I agreed to hold a fact hearing. Order (ECF No. 35). Petitioner duly filed affidavits from four anticipated witnesses. Exs. 12-14 (ECF No. 42); Ex. 15 (ECF No. 44). On November 2,

2017, I heard those witnesses in a fact hearing in West Palm Beach, Florida.  Transcript (ECF No. 55).  During the hearing, it became clear that during the relevant time between Mr. Durand receiving the flu vaccination and presenting for emergency medical treatment, he had been employed as a bailiff for a trial judge in Miami-Dade County, Florida.  I suggested calling the trial judge as a fact witness.  After the necessary arrangement were made, on December 5, 2017, I reconvened the fact hearing in Washington, DC, with the trial judge testifying via videoconference. Transcript (ECF No. 61).  Also in December 2017, petitioner filed additional records.  ECF No. 57.  On January 17, 2018, I issued factual determinations regarding the onset of Mr. Durand's GBS.  Findings of Fact and Conclusions of Law (ECF No. 62).  I directed the parties to follow these findings if they proceeded on a litigation track.  *Id.*  Instead, the parties engaged in settlement discussions.  On July 27, 2018, the parties filed a stipulation, which I adopted as my Decision awarding compensation on the same day. Decision (ECF No. 72).

On June 10, 2019, petitioner filed a motion for attorneys' fees and costs. Petitioner requests that her attorney Ms. Leah Durant be awarded $221,139.30 in attorneys' fees and $13,282.14 in costs, for a total request of $234,421.44. Fees App. (ECF No. 82) at 1.[3]  Of note, Ms. Durant included an affidavit to support the fee application.  *Id.*, Attachment 3.  Pursuant to General Order No. 9, petitioner states that she has personally incurred costs of $7,907.40 related to the litigation of this matter. *Id.* at 1-2.

On June 24, 2019, respondent filed a response providing, "Respondent is satisfied the statutory requirements for an award of attorneys' fees and costs are met in this case" and recommending that "the special master exercise his discretion and determine a reasonable award for attorneys' fees and costs." Response at 2-3 (ECF No. 83). Petitioner did not file a reply thereafter. The matter is now ripe for adjudication.

## II.    Analysis

Under the Vaccine Act, the special master may award reasonable attorneys' fees and costs for a petition that does not result in an award of compensation but was filed in good faith and supported by a reasonable basis. § 300aa–15(e)(1). In this case, Petitioner was awarded compensation pursuant to a stipulation, and therefore she is entitled to an award of reasonable attorneys' fees and costs.

Petitioners "bea[r] the burden of establishing the hours expended, the rates charged, and the expenses incurred" are reasonable. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 484 (1993). Adequate proof of the claimed fees and costs should be presented when the motion is filed. *Id.* at 484 n. 1. The special master has the discretion to reduce awards *sua sponte*, independent

---

[3] Petitioner and her counsel were afforded an unusually long period of time to file the motion for attorneys' fees and costs.  Vaccine Rule 13 provides: "Any request for attorneys' fees and costs pursuant to 42 U.S.C. § 300aa-15(e) must be filed no later than 180 days after the entry of judgment or the filing of an order concluding proceedings under Vaccine Rule 10(d)(3) or 29."  In this case, the Court entered judgment awarding compensation to the petitioner on August 21, 2018 (ECF No. 74).  Thus, any request for attorneys' fees and costs was due no later than February 17, 2019.  Petitioner requested and was granted four extensions of time to file the motion for attorneys' fees and costs.  ECF Nos. 77-81.  Thus, petitioner received a total of 294 days to file the present motion for attorneys' fees and costs.

of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Human Servs.*, 85 Fed. Cl. 313 (Fed. Cl. 2008).

In evaluating a fee request, a special master is permitted to reduce attorneys' hours found to be excessive by a percentage; a 'line-by-line' determination is not required." *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993); *Sabella*, 86 Fed. Cl. at 206 (internal citations omitted). "The special master must provide a 'concise but clear' explanation as to why the fee reduction is justified… But in providing this explanation, the special master 'is not required to explain how many hours are appropriate for any given task." *Raymo v. Sec'y of Health & Human Servs.*, 129 Fed. Cl. 691, 702 (2016) (internal citations omitted); *see also id.* at 704 (holding that a special master did not abuse her discretion in reducing one law firm's fees by 20 percent and another law firm's fees by 40 percent).

### a.  Attorneys' Fees

Petitioner requests the following rates of compensation for her attorney, Ms. Durant: $350.00 per hour for work performed in 2016, $365.00 per hour for work performed in 2017, $377.00 per hour for work performed in 2018, and $380.00 per hour for work performed in 2019. I have reviewed these rates and find them to be reasonable and consistent with what Ms. Durant has previously been awarded for her work in the Vaccine Program. Accordingly, no adjustment to the requested rates is necessary.

However, a review of Ms. Durant's billing statement (requesting compensation for 661.4 hours of work) has caused me significant concern. Ms. Durant submitted an affidavit in which she avers, "The case was extremely complicated and required me and my law firm to expend many hours prosecuting the case." Fees App., Attachment 3 at 1. She offers several justifications.

First, Ms. Durant avers that petitioner originally retained a local attorney in her home state of Florida. *Id.* The local attorney needed to refer the case because first, she was not admitted to practice in the Court of Federal Claims and second, she was apparently seeking election as a judge on a Florida state court. *Id.* Upon review, Ms. Durant seems to be referring to petitioner's original probate attorney, Ms. Dana Santino. Ms. Durant avers that while the case was being transferred, petitioner initially required that all communications with Ms. Durant go through the local attorney, with whom she had developed trust. *Id.* Ms. Durant avers this is why she billed "many hours" for communications with the local attorney and petitioner. *Id.* I do credit Ms. Durant for building her own relationship of trust with petitioner upon accepting the case.

Less acceptable are the number of hours expended by Ms. Durant to review the records. She avers that the local attorney had collected many loosely organized documents for the case. *Id.* Ms. Durant also had to review the documents obtained to date. *Id.* Ms. Durant then had to obtain and review about 5,000 pages of medical records, as well as employment records and other documents. *Id.* at 2. Ms. Durant also avers that she retained Dr. Catherine Shaer, a physician who evaluated vaccine claims at HHS for ten years, "[d]ue to the complex nature of the case" and to help evaluate the large record. *Id.* Ms. Durant also avers that she spent "many hours" working on

the case with Dr. Steinman, who opined that Mr. Durand developed GBS but that an onset ruling was necessary before he could complete a final medical expert report.  *Id.*

I recognize that this case involved an unusual presentation of GBS.  That condition most commonly presents as a monophasic peripheral neuropathy which generally has an acute onset, followed by a nadir within between 1 – 28 days.  In this case, petitioner alleged that the progression of Mr. Durand's GBS was gradual beginning some time after the flu vaccination on September 10, 2013 and progressively worsening over the subsequent months, leading up to his presentation for emergency medical treatment on January 5, 2014.  Mr. Durand did not seek medical attention between these dates.

After being admitted to the hospital, Mr. Durand received a diagnosis of GBS which was repeated consistently throughout the records from several facilities until his death on April 6, 2014.  The death certificate lists GBS as a contributing factor.  Petitioner's expert Dr. Steinman agreed with the diagnosis of GBS.  Upon review of the docket, respondent did not challenge the diagnosis of GBS.

The vast majority of the thousands of pages of medical records are from between Mr. Durand's presentation for emergency treatment on January 5, 2014 to his death on April 6, 2014.  These records contain a limited number of entries relating to the history of present illness.  Because Mr. Durand lost the ability to speak for himself, these histories are given by petitioner (his wife) and/or his adult daughter during what was certainly a stressful and painful experience.  The histories contradict each other, which together with the absence of records in the time period between the September vaccination and the January hospitalization created some question as to the onset and progression of Mr. Durand's GBS.

However, I find the number of hours which Ms. Durant herself billed for reviewing the medical records to be excessive.  As noted above, the records consistently reflected a diagnosis of GBS.  The challenge was to gain a command of the limited number of records pertaining to the history, onset, and progression of GBS.  One would expect that an attorney with significant experience (justifying her higher hourly rates) would review these records more efficiently.  I do not criticize Ms. Durant for conducting an initial review of the voluminous records, but would think that she would take notes, for example of the exhibit numbers and page numbers where the history of present illness was noted.  *Compare* Findings of Fact (identifying only five entries in the hospital records pertaining to Mr. Durand's history before presenting to the hospital).  However, Ms. Durant's repeated blocks for time for reviewing the medical records seems excessive.

This is particularly true because Ms. Durant retained two medical experts who also reviewed the same records.  By May 2016, she had retained Dr. Shaer.  She avers, "Dr. Shaer's careful review of the records and her lengthy medical report proved invaluable for me [Ms. Durant] to understand the complex medical issues in the case relating to proving a Table case and causation in fact."  Fees App., Attachment 3 at 1-2.  Dr. Shaer's invoices reflect a total of 27 hours for record review, communicating with Ms. Durant, and preparing a report for Ms. Durant (which was not filed).  Fees App., Attachment 2 at 7-9, 11, 13-14, 16. But after Ms. Durant retained Dr. Shaer,

Ms. Durant continued billing for her own extensive review, organization, and analysis of the medical records. *See generally* Fees App., Attachment 1 at 5-10.

After respondent opposed informal resolution of the case, in November 2016, Ms. Durant retained Dr. Lawrence Steinman to prepare an expert report in support of vaccine causation. Fees App., Attachment 1 at 11, Attachment 2 at 2. Dr. Steinman only charged a $2,000.00 retainer. I am aware that when Dr. Steinman submits an itemized invoice in a case, he is frequently awarded $500.00 per hour. In this case, he did not submit an itemized invoice. However, his preliminary report is only one page long. He opined concisely, "there is no doubt whatsoever that Mr. Durand had GBS and that it contributed to his death" and "the records I have reviewed are not clear as to onset," which would necessitate a finding of fact. Pet. Ex. 11. It appears that Dr. Steinman efficiently reviewed the records and recognized the crucial issue. Ms. Durant's extensive communications with Dr. Steinman and continued billing for review of medical records is excessive and repetitive. *See generally* Fees App., Attachment 1 at 10-17.

Additionally, I do not find that Ms. Durant was required to undertake significant review of the medical records or other complex subjects in preparation for the hearing. The hearing was held solely to determine the history, onset, and progression of Mr. Durand's GBS prior to his hospitalization. The hearing involved only testimony by lay witnesses. No medical treaters or experts participated. The parties did not brief the case before or after the fact hearing. *See* Pet. Ex. 11 (Dr. Steinman's preliminary report asking me to determine the date of onset); Respondent's Motion for a Fact Hearing; Findings of Fact. Accordingly, based on my experience and my knowledge of this particular case, I conclude that Ms. Durant's time billed for repetitively reviewing the medical records in this case is excessive.

A further issue with the billing entries is that they frequently display block billing by combining several discrete tasks into one large entry. The result is numerous entries billed for, on average, 2.5 – 5.0 hours such as "Obtain and review petition filed in support of claim (267 pages). Review of all documents received from current attorneys (voluminous). Engage in conference call with petitioner's current attorneys. Review and analyze claim" and "Draft detailed (long) memorandum concerning entitlement. Coordinate with former attorneys. Contact client. Review and evaluate claim." Fees App. at 1, 3. Ms. Durant billed 3.5, 8.0, 4.0,6.5,3.5 and 8.0 hours on different occasions for reviewing medical records. In February 2017, she billed 6.5 hours for reviewing and evaluating witness statements. While I am cognizant that many of these activities may be related such that one activity naturally flows into the next throughout the course of an attorney's work day, such billing practices make it difficult to assess the reasonableness of the time expended and in light of the comments above involving the task at issue, many of the entries look excessive without further explanation.

I have further concern about Ms. Durant's repeated billing for estate and tax research in Florida, totaling at least 11 hours. She avers that local counsel was required to establish Mr. Durand's estate and appoint petitioner as the representative in order to file the petition. Fees App., Attachment 3 at 3. Later in the case, local counsel had to *reopen* the estate and *reappoint* petitioner as the representative. *Id.* It is unclear why this had to occur twice. Ms. Durant also avers that "Florida law has many intricacies and complexities for the distribution of estate funds" and that she worked closely with local counsel to "comply with Florida's requirements for the distribution

of the award." Fees App., Attachment 3 at 3. The allocation of damages in a settlement for a personal injury claim involving a death and state tax may require some care and is often not understood by estate lawyers. A common issue involved how to allocate damages between a wrongful death claim and a survival claim. The allocation can have state tax implications. It is not clear whether this damages allocation issue is relevant in the Vaccine Program. In any case, it is incumbent on petitioner's counsel to provide detail and justification for the fees requested in a particular case, particular when she is requesting compensation for significant time spent on issues not related to establishing petitioner's eligibility to compensation from the Vaccine Program. Ms. Durant has not done so here. Her assertions about Florida law in the affidavit and her billing entries are overly vague. For example, on January 15, 2017, Ms. Durant billed 3 hours to "research estate matters. Advise client as to estate-related matters. Evaluate potential impact on vaccine litigation claim. Provide legal citations." Fees App., Attachment 1 at 11. On August 3, 2017, she billed 2.5 hours for "review of correspondence to and from client's estate attorney. Draft letter to estate attorney. Review and evaluate vaccine claim's impact on decedent's estate." *Id.* at 16. On August 7, 2017, she billed four hours for "review of documents obtained from client regarding decedent's estate. Conduct legal research. Coordinate with client concerning interplay between vaccine and probate proceedings." *Id.* Without further detail, I find that these entries are excessive and merit reduction.

Other tasks were billed for excessive amounts of time given the nature of the task. For example, after the Court entered judgment on the award of compensation, Ms. Durant billed over five hours for contacting two law firms who previously represented petitioner (seemingly related to establishing Mr. Durand's estate and appointing petitioner as the representative). Based on these circumstances, it appears that Ms. Durant was seeking to notify the other law firms about the deadline for filing a motion for attorneys' fees and costs. Fees App., Attachment 1 at 24. Given that Ms. Durant noted in her affidavit that "all attempts to reach prior counsel . . . have failed", the amount of time expended seems excessive. Additionally, on March 25, 2019 Ms. Durant billed 2.5 hours to "Review and evaluate newly obtained records. Update file and revise detailed medical chronology". Fees App., Attachment 1 at 24. This seems excessive given that petitioner had been awarded compensation on which the Court had entered judgment over five months prior. Finally, Ms. Durant's bill of 14 hours for preparing the instant motion for attorneys' fees is also excessive. Fees App., Attachment 1 at 25.

For the foregoing reasons, I conclude that the hours billed on this matter are significantly excessive. Therefore, I hereby reduce the requested attorneys' fees by 30%, resulting in a reduction of **$66,341.79**. Petitioner is awarded **$154,797.51** in final attorneys' fees. In my judgment, this still represents a substantial fee award for this case.

### b. Attorneys' Costs

Like attorneys' fees, a request for reimbursement of costs must be reasonable. *Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992). Petitioner requests total attorneys' costs in the amount of $13,282.14. Fees App. at 1. This amount is comprised of acquiring medical records, postage, the Court's filing fee, travel expenses related to the entitlement hearing, and expert work performed by Drs. Catherine Shaer and Lawrence Steinman. Petitioner has provided adequate supporting documentation of the costs, which appear reasonable upon

review.  Accordingly, petitioner is awarded **$13,282.14** in final attorneys' costs.

### c.  Petitioner's Costs

Pursuant to General Order No. 9, petitioner warrants that she has personally incurred costs of $7,907.40 as part of this litigation. Fees App. at 2. She requests reimbursement of **$7.40** spent on mailing and postage related to the case.  These costs are adequately documented, reasonable, and shall be reimbursed.

Petitioner also requests reimbursement of $7,900.00 paid to three different law firms in Florida.  This merits further discussion.  The Vaccine Act permits the filing of a claim for injury on behalf of a person who received a vaccine and has subsequently passed away.  However, the claim may be brought only by "the legal representative" of the deceased vaccinee's estate.  42 U.S.C. § 300aa-11(b)(1)(A).  Additionally, when a claim will result in compensation, respondent typically requires documentation that the estate has been established and that a representative has been appointed, before processing the compensation.  Accordingly, special masters generally award the reasonable costs of establishing an estate and appointing a representative.  I am willing to do so here.  However, in my experience, the costs associated with establishing an estate and naming a personal representative are generally limited.  In this case, the significant sum requested, the limited information provided by petitioner, and the involvement of three different law firms over the course of several years is concerning.

Petitioner first requests reimbursement for: "5/31/14: Dana Santino, Esq. – Representation of Estate - $5,000.00." Fees App. at 2.  As noted above, Ms. Santino was the first attorney retained by petitioner, even before her attorney of record in the vaccine claim, Ms. Durant.  Petitioner did file a copy of a fee agreement with Ms. Santino including a "non-refundable" retainer of $5,000.00. Fees App., Attachment 2 at 33-37.  Petitioner also filed a copy of a cancelled check to Ms. Santino and her firm for $2,500.00, dated May 31, 2014.  Fees App., Attachment 2 at 38; *see also id.* at 34 (handwritten notation on the fee agreement corresponding to this payment).  Petitioner did not file documentation of any further payments to Ms. Santino.  Petitioner did not file billing entries from Ms. Santino.  However, based on my recollections and Ms. Durant's billing records reflecting Ms. Santino's early involvement in filing the vaccine claim, I find that it is reasonable to reimburse petitioner for the documented payment of **$2,500.00** to Ms. Santino.  However, I will not award anything more, due to the lack of evidence that it was either earned or paid out.

Petitioner also avers that she paid a second law firm $1,300.00 for "representation of estate" in late 2017 and that she paid a third law firm $1,600.00 for "reopening of estate and re-appoint Olga Durand as personal representative."  Fees App. at 2.  She filed sufficient documentation that these amounts were incurred and paid. Fees App., Attachment 2 at 40-44.  She did not file any information about the requested hourly rates or the work performed.  Ms. Durant's billing entries do reflect communication with these firms about the award of compensation from the Vaccine Program in relation to the estate. *See, e.g.*, Fees App., Attachment 1 at 20, 22.  It does appear that the estate was established and petitioner was appointed as the representative in 2014, after which the estate was closed.  Then in late 2017 or early 2018, the estate had to be re-opened and petitioner re-appointed as the representative in order to receive the award of compensation.  However, I am somewhat concerned about the lack of documentation, the risk that the attorneys

also paid for tasks unrelated to securing the award from the Vaccine Program, and the duplication of work expended by Ms. Durant.  In my discretion, I find it reasonable to reimburse petitioner for **$2,000.00** paid for both the second and third law firms who represented the estate.

**Petitioner is reimbursed for a total of $4,507.40 in out-of-pocket costs.**

### III.    Conclusion

In accordance with the foregoing, petitioner's motion for attorneys' fees and costs is **GRANTED**. I find that Petitioner is entitled to a reimbursement of attorneys' fees and costs as follows:

| | |
|---|---|
| Attorneys' Fees Requested | $221,139.30 |
| (Reduction of Fees) | - ($66,341.79) |
| **Total Attorneys' Fees Awarded** | **$154,797.51** |
| | |
| Attorneys' Costs Requested | $13,282.14 |
| (Reduction of Costs) | - |
| **Total Attorneys' Costs Awarded** | **$13,282.14** |
| | |
| **Total Attorneys' Fees and Costs Awarded** | **$168,079.65** |
| | |
| **Petitioner's Costs Awarded** | **$4,507.40** |

**Accordingly, the following is awarded:**

1) **A lump sum in the amount of $168,079.65, representing reimbursement for petitioner's attorneys' fees and costs, in the form of a check payable jointly to petitioner and Ms. Leah Durant, Esq.; and**

2) **A lump sum in the amount of $4,507.40, representing reimbursement for petitioner's costs, in the form of a check payable solely to petitioner. [4]**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court shall enter judgment in accordance herewith.[5]

**IT IS SO ORDERED.**                         **/s/Thomas L. Gowen**
                                                          Thomas L. Gowen
                                                          Special Master

---

[4] These amounts are intended to cover all legal expenses incurred in this matter.  This award encompasses all charges by the attorney against a client, "advanced costs," and fees for legal services rendered.  Furthermore, Section 15(e)(3) prevents an attorney from charging or collecting fees (including costs) that would be in addition to the amount awarded herein. *See generally Beck v. Sec'y of Health & Human Servs.*, 924 F.2d 1029 (Fed. Cir. 1991).

[5] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review. Vaccine Rule 11(a).